## No. 16,251.

NIELSON ET AL. *v.* NEWMYER ET AL.
(228 P. [2d] 456)

Decided January 8, 1951.   Rehearing denied March 5, 1951.

Mr. MERLE M. MARSHALL, for plaintiffs in error.

Mr. RALPH CARR, IRENA S. INGHAM, Mr. OMER GRIFFIN, Mr. JEAN S. BREITENSTEIN, for defendants in error.

*In Department.*

MR. JUSTICE STONE delivered the opinion of the court.

SINCE there is no dispute as to their several interests, we shall refer to those of Mildred B. Newmyer, Frank Newmyer and Greta Newmyer by the name of Frank; to those of Alfred E. Newmyer and Pauline Newmyer by the name of Alfred, and those of L. Moyle Nielson and Gladys Nielson by the name of Nielson. We shall refer to the Rio Grande Canal Water Users Association as the Water Users Association.

Alfred brought this action to require the Water Users Association to deliver to him twenty-five inches of water from the Rio Grande Canal. The Water Users Association, by answer, suggested the need of other parties for a full determination of the water rights; the uncertainty of the decree of 1931; the pendency of suits questioning it; and the background of litigation resulting in the decree. It alleged demand for delivery of the twenty-five inches of water, both by Alfred and Frank, and asserted that "defendant is willing, ready and able to deliver the twenty-five inches of water here in controversy, out of the Rio Grande Canal on like terms and conditions upon which deliveries are made to other water users under said canal to any person or persons to whom the Court may find or determine may be entitled thereto, * * *." Nielson intervened, denying plaintiffs' right to the water, setting out his claim thereto, alleging estoppel of plaintiffs by their deed to the water, praying that plaintiffs take nothing by their complaint, and asking for general relief.

The case was submitted on an agreed statement of

facts consisting principally of written documents, which may be summarized as follows:

On April 4, 1931, by decree of the district court, Frank was declared to be the owner of 285.2 statutory inches of water, and entitled to delivery at two mentioned head-gates upon payment of annual assessments, said water to be used only upon the 560 acres described in the de-cree and known as the Dunn ranch.

At the time of the entry of the decree, Frank held a lease or contract of purchase of the Hudson and Baker land adjoining the Dunn ranch, and at some time in the very month in which the decree was entered, the Water Users Association granted to him the privilege of using on the Hudson and Baker land twenty-five inches of his water so decreed for use only on the Dunn ranch, pro-vided that whenever he should have conveyed or other-wise lost title to all of the Hudson and Baker land, the use and application of the water should automatically revert to, and thereafter be used and applied only on, the Dunn ranch.

On March 22, 1935, Frank conveyed to Alfred by war-ranty deed parcels containing 400 acres of the Dunn ranch, together with six-sevenths of the water, which was further described as 235 5/7 inches out of priority No. 178 and 8.743 inches out of priority No. 198.

On May 15, 1941, Frank conveyed to Alfred by quit-claim deed a further eighty-acre parcel of the Dunn ranch, including all water rights, and particularly nam-ing and including 15.75 inches of this water. It was recited in this deed that it was "the intent and purpose of the grantors and grantees that the grantees shall have 260.2 inches out of what is known as the Dunn rights aggregating 285.2 inches and the grantors the remaining 25 inches." This deed was executed pursuant to a settle-ment agreement between the Newmyer brothers, Frank and Alfred, and as part of the same settlement, under date of May 12, 1941, Alfred quitclaimed to Frank "Twenty-five (25) statutory inches of water out of pri-

ority No. 178 and Priority No. 198 on the Rio Grande River, being a part of the water right heretofore attached to what is known as the Dunn Ranch and delivered through the Rio Grande Canal and being the same water right heretofore transferred to what is known as the Hudson-Baker lease * * * under contract between The Rio Grande Canal Water Users Association and Mildred Newmyer and Frank Newmyer, dated April 1931; it being the purpose and intent of the grantors and grantees that the grantors shall have 260.2 inches out of what is known as the Dunn rights aggregating 285.2 inches, and the grantees the remaining 25 inches."

In February 1947, Frank conveyed to Nielson the Hudson-Baker land with water rights, specifically including the aforesaid twenty-five inches, the deed being held in escrow, but, by admission of all parties, the title fully conveyed.

The trial court found in favor of plaintiffs Alfred and Pauline Newmyer and adjudged that the defendant Water Users Association deliver the twenty-five inches of water in dispute to plaintiffs, at their order, for use only upon the lands known as the Dunn ranch.

The basis of the decree appears from the statement in the memorandum of the trial judge: "As this court views it, none of the parties herein involved became at any time invested or divested of the title to the 25 inches of water. It had been permanently attached to the Dunn Ranch by decree of Court, and no act of the parties hereto, intentional or otherwise, could forestall or nullify or alter the terms of that decree." Accordingly, the claim of interveners Nielson was considered and argued as involving the question of estoppel by Alfred by virtue of his quitclaim deed to Frank. In this we think the court and counsel erred.

In considering the situation here involved, we must have in mind:

First: That a water right is a property right separate and apart from the land on which it is used.

The right to change the place of use is inherent as one of the incidents of ownership (*Lower Latham D. Co. v. Bijou Irr. Co.*, 41 Colo. 212, 93 Pac. 483), provided only that the rights of others are not infringed. The land for which it was appropriated or on which it has been used may be conveyed or held without the water, and the water may be conveyed or held without the land (*Strickler v. Colorado Springs*, 16 Colo. 61, 26 Pac. 313), or any part of the land may be conveyed together with any part of the water right and the remainder be retained. Where, in conveyance of land a part only of the appurtenant water right is described and specified as being conveyed therewith, such specific designation destroys any presumption of intention to convey the remainder. *Davis v. Randall*, 44 Colo. 488, 99 Pac. 322.

Second: That the restriction on the use of the water here involved does not require its use on the Dunn ranch, but only prohibits its use elsewhere. Notwithstanding this restriction, Frank could have conveyed the Dunn ranch without this water right. True, he might have been unable to use the water elsewhere and consequently might have lost it by abandonment, but the purchaser of the land without the water could have had no claim to it or to its use. If Frank conveyed the land with a part of the water right, the purchaser had no claim to the water except that part which had been conveyed to him, and could have no concern with the part of the water which had not been so conveyed.

Third: That the restriction on the use of the water was not for the benefit or protection of the Dunn ranch or its owner, but rather was apparently for the benefit of the Water Users Association, and the party for whose benefit a restriction is made may waive the restriction. As a matter of fact, the restriction as to the use of this twenty-five inches of water was waived in the very month of the entry of the decree by which it was created, in April 1931, through permission given by the Water Users Association for use of the water on the

Hudson-Baker land, where it has been used continuously since the date of the decree. If the rights of other parties were affected by such waiver, they have made no protest so far as appears as to the waiver of their right since 1931, and are not now here appearing with any objection thereto. True, that waiver was granted only for so long as Frank should hold title to any part of that land, and the waiver provided that upon loss of such title the use of the water should automatically revert to, and be used and applied only upon, the Dunn ranch; but the same right which authorized the waiver of the restriction in 1931 authorized the further waiver of the restriction evidenced by the answer of the Water Users Association in this suit, wherein it asserted that it is willing, ready and able to deliver the twenty-five inches of water here in controversy to the person whom the court may find to be entitled thereto.

From the conveyances before us, it appears without dispute that by the decree in 1931 Frank became the owner of 285.2 inches of the water to be used only on the 560-acre Dunn ranch. He first, in 1935, conveyed to Alfred 400 acres of the ranch, together with 6/7ths of the water, or approximately 244.45 inches. Notwithstanding that conveyance, Frank still retained 160 acres of the Dunn ranch and 40.75 inches of the water which was restricted to use thereon. Thereafter in 1941, Frank conveyed to Alfred another eighty-acre parcel of the Dunn ranch, including therewith 15.75 inches of water. In that conveyance he not only included a particularly specified part of the remaining water, leaving twenty-five inches excluded from the conveyance, but, as though to forestall any question, the intent was recited in the deed that the grantees should have "260.2 inches out of what is known as the Dunn rights aggregating 285.2 inches and the grantors the remaining 25 inches." Then, as though to make assurance doubly sure, Alfred executed a quitclaim deed to Frank for the twenty-five inches, with the detailed wording hereinbefore recited,

although Alfred had not acquired any title or interest therein.

It appears from these conveyances that Frank retained eighty acres of the Dunn ranch, as well as twenty-five inches of the water, and plaintiffs have made no showing that Frank was not thereby entitled at least to that portion of the water for use on the eighty acres which he retained. If so, then Alfred had no claim thereto even under his theory and that adopted by the trial court; however, that matter was not here urged and need not be here considered. In any event, assuming that the deeds to Alfred conveyed to him the entire Dunn ranch, still they did not convey to him the entire water right. The twenty-five-inch water right here involved was retained by Frank by the most explicit descriptions and recitals in both deeds. Having retained the ownership of that water, Frank had full right and authority to make conveyance of it to interveners Nielson, subject only to the restriction on its use in behalf of the Water Users Association. Whether or not the Water Users Association did waive the restriction was no legal concern of Alfred's, for he never at any time acquired any right to that twenty-five inches of water. The Water Users Association having waived that restriction, interveners are entitled to the delivery of the water, upon compliance with the terms of the waiver.

The extent to which the Water Users Association might enforce that restriction, absent any showing of damage, we need not consider in view of its waiver.

The judgment is reversed, and the cause remanded with instruction to enter judgment of dismissal of plaintiffs' action and for delivery of the water here in dispute to interveners.

Mr. Chief Justice Hilliard and Mr. Justice Jackson concur.